**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**MONROE DIVISION**

| | | |
|---|---|---|
| **NASERELDIN KHARASH** | * | **CIVIL ACTION NO. 14-0648**<br>**Section P** |
| **VERSUS** | * | **JUDGE ROBERT G. JAMES** |
| **ERIC H. HOLDER, JR., ET AL.** | * | **MAG. JUDGE KAREN L. HAYES** |

**REPORT AND RECOMMENDATION**

Before the undersigned Magistrate Judge, on reference from the District Court pursuant to 28 U.S.C. § 636(b)(1)(B), is a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 [doc. # 1] filed by Nasereldin Kharash ("petitioner"). For reasons stated below, it is recommended that the petition be DENIED and DISMISSED with prejudice.

**Background**

Nasereldin Kharash is a native of Sudan, and an immigration detainee who, since February 2013, has resided in the custody of the Department of Homeland Security/Bureau of Immigration and Customs Enforcement (DHS/ICE). On March 24, 2014, Kharash filed the instant petition for writ of habeas corpus. He alleged that on November 16, 2012, he was ordered removed from the United States, and that the order became final when he failed to appeal it. (Kharash Affidavit; Petition, Exh. [doc. # 1]). Relying on *Zadvydas v. Davis*, 533 U.S. 678, 121 S.Ct. 2491 (2001), Kharash argued that his continued detention violated his right to due process under the Fifth Amendment of the United States Constitution. He sought declaratory and injunctive relief enjoining the government from constitutional violations, and praying for any other relief the court deemed necessary.

In light of the facts alleged by petitioner, the court ordered the government to file a

response to the petition. (April 14, 2014, Mem. Order [doc. # 2]). On May 9, 2014, the government so complied. (Gov.'t Response [doc. # 6]). On May 16, 2014, petitioner filed a supplemental brief, which was docketed as a motion for preliminary injunction. [doc. # 8]. On May 20, 2014, the undersigned appointed counsel to represent petitioner, and ordered an evidentiary hearing eventually set for July 17, 2014. *See* doc. #s 9-17.

At the July 17, 2014, hearing, petitioner, through counsel, orally moved to continue the hearing because he agreed to "now cooperate." (Minutes of Court [doc. # 23]). He also orally moved to withdraw his pending motion for preliminary injunction. *Id*. The court granted both motions and reset the hearing for September 3, 2014. *Id*.

Nevertheless, on August 21, 2014, petitioner filed a pro se motion to stay his removal on the basis that Sudan was under "Temporary Protected Status," and therefore if he were deported, he would have a high chance of being killed on sight upon arrival in his native country. *See* Aug. 25, 2014, Report and Recommendation [doc. # 27]. The court denied the motion for lack of jurisdiction. *Id*.; Oct. 8, 2014, Judgment [doc. # 34].

Meanwhile, petitioner did not depart the United States. Following several continuances, an evidentiary hearing was held on January 29, 2015. An interpreter certified in Arabic was present and assisted petitioner with translation. The matter is now before the court.

**Findings**

Four government witnesses, plus petitioner, testified at the hearing. The government witnesses included Trevence King, an immigration enforcement agent with DHS/ICE; Lisa Fruge', a DHS/ICE deportation officer; Jeremy Lee, a detainee escort for DHS/ICE; and Clen Roberts, an immigration enforcement agent for DHS/ICE. The government introduced all 24 exhibits that were accepted into evidence. From the witness testimony and exhibits, the

undersigned finds as follows:

1. Petitioner is a native and citizen of Sudan.

2. Petitioner was admitted to the United States at New York, New York on May 28, 1989, on a non-immigrant student visa to attend Columbia University.

3. Petitioner did not attend Columbia University.

4. On May 28, 2010, petitioner was convicted of domestic assault in Shelby County, Tennessee, and sentenced to time served.

5. Because of petitioner's failure to maintain or comply with the conditions of his non-immigrant status, DHS advised petitioner on June 7, 2010, that he was subject to removal from the United States and issued him a notice to appear ("NTA"). In connection therewith, DHS also issued a warrant for petitioner's arrest.

6. On June 7, 2010, petitioner was taken into DHS custody. He was released on bond on September 29, 2010.

7. Petitioner appeared at a hearing before an immigration judge on July 28, 2010. In a November 16, 2012, written decision, the immigration judge:

   a) Denied petitioner's application for asylum;
   b) Denied petitioner's application for withholding of removal;
   c) Denied petitioner's application for withholding of removal under the Convention Against Torture;
   d) Denied petitioner's application for cancellation of removal;
   e) Ordered petitioner's removal to Sudan on the charges itemized in the NTA; and
   f) Advised the parties that they had 30 days to appeal the decision to the Board of Immigration Appeals.

8. Petitioner never appealed the decision of the immigration judge. At the hearing before this court, petitioner testified that he did not receive a copy of the immigration judge's decision until last year when the government provided him with a copy of his file. However, petitioner did not appeal the order of removal or otherwise take any steps to reopen his case before the immigration court.

9. Despite purporting not to have received the decision of the immigration judge, petitioner self-surrendered to DHS/ICE on February 19, 2013, at Memphis, Tennessee.

10. On March 5, 2013, DHS/ICE wrote to the Consul General for the Embassy of the Republic of Sudan, Washington D.C., in which it explained that an immigration judge had ordered petitioner's removal from the United States and asked the consulate to issue a

travel document for petitioner.

11. On May 14, 2013, DHS/ICE reviewed petitioner's file and decided to continue his detention pending his anticipated removal.

12. On July 11, 2013, the Republic of the Sudan issued an "Emergency Travelling Document" on behalf of the petitioner. The document does not contain an expiration date.

13. On August 23, 2013, DHS/ICE officers attempted to escort petitioner onboard an Ethiopian Airlines flight at Dulles International Airport, Virginia. Petitioner, however, flailed his arms about and struggled against the officers. Accordingly, the flight crew refused permission for petitioner to board.

14. On September 12, 2013, DHS/ICE reviewed petitioner's file and decided to continue his detention pending his anticipated removal.

15. On November 14, 2013, DHS/ICE issued petitioner a Notice of Failure to Comply for his refusal to board the flight on August 23, 2013. The Notice advised petitioner that because of his actions, his removal period was extended pursuant to § 241(a)(1)(C) of the Immigration and Nationality Act.

16. On January 7 and February 6, 2014, DHS/ICE served petitioner with Warning[s] for Failure to Depart.

17. On March 3, 2014, petitioner again refused to board a flight, this time at Alexandria International Airport, Alexandria, Louisiana. Petitioner resisted the efforts by DHS/ICE agents to escort him aboard the commercial flight by yelling, "I'm not going on this plane," and by continuing to hold on to the gate. Upon hearing the commotion, the captain exited the airplane and stated that he would not permit petitioner onboard.

18. On March 6, 2014, DHS/ICE issued petitioner a Notice of Failure to Comply for refusing to board his scheduled removal flights on August 23, 2013, on March 3, 2014.

19. On March 7, April 3, and May 6, 2014, DHS/ICE served petitioner with further Warning[s] for Failure to Depart.

20. On October 14, 2014, petitioner again refused to board a commercial flight at Alexandria International Airport, Alexandria, Louisiana. Petitioner leaned against a wall and resisted efforts by DHS/ICE officers to escort him onto the plane. Because of petitioner's lack of cooperation, the pilot advised the DHS/ICE agent that petitioner would not be permitted to board the aircraft.

21. Petitioner testified at the January 29, 2015, hearing that he was suspicious of his travel document because he did not review and complete the application for the document.

22. At the hearing, petitioner acknowledged that he failed to board the flights on three occasions. He explained, however, that he refused to board because: 1) he feared he might suffer reprisals upon his return to Sudan; 2) he has children here; and 3) he was concerned that his travel document was inauthentic.

23. DHS/ICE has an emergency travel document for petitioner. It also has his expired passport. According to Agent Fruge', a passport is not required to travel – solely the emergency travel document.

24. ICE Agent Jeremy Lee presented petitioner's travel document to the airline check-in agent who reviewed it and issued a ticket of passage. In Agent Lee's experience, an airline will not issue an international ticket if there is a question regarding the validity of the travel document.

**Law**

Petitioner seeks *habeas corpus* relief pursuant to 28 U.S.C. § 2241, which provides in pertinent part that "[t]he writ of *habeas corpus* shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States . . . ." 28 U.S.C. § 2241(c)(3). The question therefore is whether petitioner's continued detention violates federal law.

As an initial matter, the court notes that petitioner's removal order became administratively final on, or about December 17, 2012, – 31 days after the date of the immigration judge's decision, during which time neither side appealed the decision to the Board of Immigration Appeals. *See* 8 U.S.C. § 1101(a)(47)(B)(ii) (order becomes final upon expiration of the period in which the alien is permitted to seek review of such order by the Board of Immigration Appeals). Thus, he presently is detained pursuant to 8 U.S.C. § 1231, which generally requires the Attorney General to remove him within 90 days, *inter alia*, from the date

that the order of removal became administratively final. *See Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006); 8 U.S.C. § 1231(a)(1).

If an alien is not removed during the 90 day removal period, then he shall be subject to supervision under regulations prescribed by the Attorney General requiring the alien, *inter alia*, to provide appropriate information. 8 U.S.C. § 1231(a)(3). However,

> [t]he removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal.

8 U.S.C. § 1231(a)(1)(C).

Further, if it is shown that the petitioner by his conduct has intentionally prevented DHS/ICE from effecting his removal, then the removal period should be equitably tolled until such time as petitioner either begins to cooperate with DHS/ICE, or his obstruction no longer thwarts his removal. *See Balogun v. I.N.S.*, 9 F.3d 347, 351 (5th Cir. 1993); *Benn v. Bureau of Immigration and Customs Enforcement*, 82 Fed. Appx. 139, 140 (5th Cir. 2003) (alien's incomplete and conflicting statements to the INS hampered removal efforts and therefore extended the removal period); *Dumpeh v. Moore*, 2007 WL 3235099, *1 (W.D.Tex. Oct. 26, 2007) (citations omitted) ("An alien must cooperate in good faith in his removal.").

In *Zadvydas v. Davis*, the Supreme Court held that the post-removal-order detention statute implicitly limits an alien's detention to a period reasonably necessary to bring about that immigrant's removal. *Zadvydas v. Davis*, 533 U.S. 678, 121 S.Ct. 2491 (2001). The Court noted that the statute does not permit indefinite detention; rather, the "reasonably necessary" detention period should be limited to six months after the removal order becomes final. *Id.* at 697-702.

Under *Zadvydas*, it is presumptively constitutional for an alien to be detained for six months after a final order of removal. *Agyei-Kodie v. Holder*, 418 F. App'x 317, 318 (5th Cir. 2011). After that six month period expires, and the alien meets his or her initial burden of demonstrating that there is no significant likelihood of removal in the reasonably foreseeable future, then the government must furnish sufficient rebuttal evidence. *Zadvydas, supra*. The mere expiration of the six-month detention period, however, does not, by itself, warrant release.

As Justice Breyer explained,

> [a]fter this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6–month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Zadvydas*, 533 U.S. at 701; *see also Andrade*, 459 F.3d at 543.

In addition, the Ninth Circuit has recognized that,

> [t]he risk of indefinite detention that motivated the Supreme Court's statutory interpretation in *Zadvydas* does not exist when an alien is the cause of his own detention . . . The reason is self-evident: the detainee cannot convincingly argue that there is no significant likelihood of removal in the reasonably foreseeable future if the detainee controls the clock."

*Pelich v. Immigration and Naturalization Service*, 329 F.3d 1057, 1060 (9th Cir. 2003).

**<u>Discussion</u>**

Applying the foregoing principles to the facts at hand, the undersigned finds that petitioner did not meet his initial burden of demonstrating that there is no reasonable likelihood of removal in the reasonably foreseeable future. In any event, the government established that the Republic of Sudan has issued petitioner a facially valid travel document that the airlines were

willing to accept for travel. By his own admission, petitioner declined on three occasions to board commercial aircraft on tickets secured by the government for his repatriation.

Furthermore, the court rejects the rationale proffered by petitioner for his refusal to board the aircraft. First, the immigration court considered, but rebuffed petitioner's arguments against removal, including his fear of harm if repatriated and his ties to this country. This court does not have jurisdiction to revisit that decision. *See Rosales v. Bureau of Immigration & Customs Enforcement*, 426 F.3d 733, 736 (5th Cir. 2005) (REAL ID Act divested federal courts of jurisdiction over § 2241 petitions attacking removal orders).[1]

Second, petitioner's questioning of the validity of the travel document does not excuse his refusal to board the aircraft. If, as petitioner contends, the travel document turns out to be invalid, the worst that would befall him would be that Sudan would refuse him entry or an intermediate country would refuse him transit.

In sum, by refusing to board flights to his home country on three occasions, petitioner has acted to prevent his removal. As such, the removal period is suspended. *See* 8 U.S.C. § 1231(a)(1)(C). Accordingly, DHS/ICE may continue to detain him until such time as he begins to cooperate *fully* with its efforts to remove him.

Alternatively, even if this case were considered solely under *Zadvydas* irrespective of any statutory tolling of the removal period, the undersigned further finds that petitioner's refusal to cooperate in the removal process thwarts the requisite determination that there is no likelihood of

---

[1] Title 8 U.S.C. §1252(g) deprives federal district courts of jurisdiction to entertain claims "by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders . . ."

his removal in the reasonably foreseeable future.[2]

## Conclusion

For the reasons discussed above, the undersigned finds that petitioner has hampered DHS/ICE's efforts to effect his removal and that such actions have suspended or tolled the removal period. The undersigned further finds that there is no indication at this time that petitioner will not be removed to his country of origin once he decides to comply fully with the efforts to remove him. Accordingly,

IT IS RECOMMENDED that the Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 [doc. # 1] filed by NASERELDIN KHARASH be DENIED and DISMISSED, with prejudice.

Under the provisions of 28 U.S.C. §636(b)(1)(c) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR,**

---

[2] "Petitioner's cooperation with the removal process is relevant to the inquiry of whether there is a significant likelihood of removal in the reasonably foreseeable future." *Ayigba v. Young*, Civ. Action No. 06-2247, 2007 WL 2736678 at *6 (W.D. La. July 12, 2007) (citations omitted).

**FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 10th day of February 2015.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE